## DEFENDANT'S STATEMENT AS TO WHY HE BROKE CONTRACT INCOMPETENT.

Circuit Court of Cuyahoga County.

M. A. HANNA ET AL v. J. J. CROZIER, ADMINISTRATOR OF THE ESTATE OF J. ELI CROZIER, ETC.

Decided, November 30, 1908.

*Evidence—Conclusions—Termination of Contract—Acquiesence Therein.*

1. It is not competent for a defendant, sued for a breach of contract which he admits, to be asked by his own counsel why he broke his contract, for that permits him to give conclusions instead of the facts from which his conclusions were drawn.
2. The fact that one has delayed bringing suit for damages for breach of a contract for some months after notification that the other party to the contract will not abide by the contract is no evidence of acquiesence in a termination of the contract.

*Squire, Sanders & Dempsey,* for plaintiff in error.
*Burton & Dake* and *William Howell,* contra.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

The parties here stand in the reverse order in which they stood in the action in the court of common pleas. The terms

"plaintiff" and "defendants" as used in this opinion, will refer to the parties as they stood in the original action.

The plaintiff avers in his second amended petition that on the 18th day of November, 1901, he and the defendants entered into an agreement by which the defendants were to furnish to the plaintiff five hundred tons of a certain grade of iron; that the same was to be shipped at the rate of twenty tons per week, between the first day of January, 1902, and the first day of August, 1902, and the plaintiff agreed to pay therefore at the rate of $17 per ton, to be paid at the town of Kennet Square, Pennsylvania, in installments; when the iron aforesaid was delivered at the furnace of the defendants at Buffalo, New York, in cars for shipment to the plaintiff upon presentation to plaintiff of bill of lading for same with sight draft attached for the amount due therefor, at the rate aforesaid.

The plaintiff further says that the defendants failed to deliver any part of the iron so contracted for, and that prior to the time when delivery was to begin under the contract, to-wit, on the 28th day of December, 1901, the defendants notified the plaintiff, in writing, that they would not carry out the contract but repudiated the same.

The defendants answer, admitting that they entered into the contract as claimed by the plaintiff, and that on the 28th day of December, 1901, they notified the plaintiff that they would not carry out the contract. They say, however, that the contract was a continuation of a former contract, under which the defendants were furnishing iron to the plaintiff and that subsequent to the making of the contract sued upon, the plaintiff defaulted in the earlier contract, in that he failed to promptly pay for the iron shipped under such former contract as he was required by said former contract to do. And though the answer does not set up the fact that the plaintiff was unable to carry out his part of the contract of November 18, 1901, yet upon the trial the claim was made, and to a certain extent at least a trial was had upon the theory that the plaintiff was unable to carry out the contract of November 18, 1901; that his financial condition was such that he could not have carried it out.

The answer further avers that the plaintiff acquiesced in and agreed to the cancellation of the contract, for the breach of which this suit was brought. The result of the trial was a verdict for the plaintiff.

A motion for a new trial, made by the defendants, was overruled, and exception to such overruling of the motion was made by the defendants.

Exceptions also were taken to a ruling upon the introduction of evidence which is complained of in the proceedings here, and exception is taken to the charge of the court; and it is urged here that the court erred in these particulars, and that therefore the judgment should be reversed.

The ruling upon the evidence, complained of is found by an examination of pages 66 and 67 of the bill of exceptions. One Reuben E. McNahon, an agent of the defendants, who had charge of the shipping of the iron, was being examined, and was asked this question by counsel for the defendant:

"I will ask you, Mr. McNahon, if under the terms of the contract which is in dispute here, you did make any shipments to Kennet Square Foundary Company of this iron?"

To this he answered: "We did not."

He was then asked: "You may state why you did not."

This question was objected to by the plaintiff and the objection sustained. To this ruling the defendants excepted, and then stated that they offered to show that "if the witness were allowed to answer, that the defendants had obtained knowledge, through the conduct of the plaintiff, subsequent to the execution of the contract, that he did not intend to carry out the term of the contract, and that he was insolvent and unable to do so."

The question asked by counsel for the defendants of their own witness, "You may state why you did not," is clearly improper. One can conceive of any number of answers which might have been given to this question, which would have been incompetent. The witness might have answered, because we heard from John Doe that the plaintiff was insolvent; or he might have answered, because we had made up our minds that we didn't care to do business any longer with the plaintiff. Indeed

he might have answered in such wise that his answer would nec-
essarily be incompetent. It is not competent ordinarily, for
one to ask of his own witness why he did or did not do certain
things. However, we are not left here to conjecture as to what
the answer would be obtained was incompetent. It was not
proposed to have the witness say what facts he relied on as a
justification, but only state certain conclusions at which he had
arrived.

There was no error in the ruling of the court on this question.

The language complained of in the charge is that the court
said, in reference to the claim of the defendants, there the
plaintiff acquiesced in and agreed to the rescission of the con-
tract: "There is no evidence that the parties here at any time
abandoned or rescinded this contract, so that part of the issue
you will have no reason to consider."

We think the court was entirely justified in using this lan-
guage.

The only evidence the defendants could claim tended in any
way to support their contention in this issue was their letter of
December 28, 1901, which reads:

"CLEVELAND, O., Dec. 28, 1901.

"KENNET FOUNDRY COMPANY,
    Kennet Square, Pa.

"*Gentlemen*: We are advised today by the agent of the
Pennsylvania R. R. that you have not paid for the car of Buffalo
pig iron which was shipped you last Nov. We think you will
readily understand that we can not do business in this way, and
that when we entered your order of Nov. 16th for 500 tons of
Buffalo charcoal iron the understanding was that our drafts
would be paid immediately upon presentation. The experience
we have had with this car is such that we can not do business in
this way, and have therefore, canceled your order of Nov. 16th
and will not ship any more pig iron to you excepting on receipt
of your New York draft, or postal order, before the iron is
shipped and we will then ship you iron if you desire at the
market price, but under no other conditions.

"Yours very truly,

"M. A. HANNA & Co."

The plaintiff did nothing until the 20th of March next follow-
ing, when he wrote the following letter:

"KENNET SQUARE, PA., Mar. 20, 1902.
"M. A. HANNA & Co.,
 Cleveland, Ohio.

"*Genls*: The writer has been absent from the office for some time on account of sickness, or would have taken up your letter of December 28th, before this. Now you say that the understanding was that we were to pay your drafts immediately upon presentation. Now we do not know of any such an agreement, but we are aware that it is always supposed to pay drafts promptly, and we regretted as much as you did that the draft was not paid promptly, but we had a firm that was holding us back a settlement that put us very short, and that is the reason we could not pay the draft. Now we wish to know if you will give us another chance, as you will admit that all our other dealings were satisfactory and we paid very dear for the delay in the last draft. We have experimented with your iron and have been put to extra expense in doing so, and have now the iron at a point where we can make satisfactory profits from the same and now to use another iron, it would mean to go all over the matter. Will you not consider this matter, place yourself in our position, and you would thank us to favor you, for which we will thank you to do for us.

"If you will favor us, the drafts will be paid promptly when presented to us; if not we will ask no more.

"Trusting to hear from you, favorably, we are
   "Yours truly,
    "KENNET FOUNDRY & MAC. WKS.
"Dict. by J. E. C."

The defendants on the 22d of March, 1902, wrote the following letter:

   "CLEVELAND, O., Mar. 22, 1902.
"KENNET FOUNDRY & MACHINE WORKS,
 Kennet Square, Pa.

"*Gentlemen*: We have your favor of the 20th inst., and note contents carefully. We feel that we are fully justified in the position that we take. As written you Dec. 28th and as advised at that time, we cancelled your order and do not understand that we owe you any iron whatever. In the future, if we had iron such as you desire, we will be pleased to ship it to you at the market price at the time of shipment, but only upon receipt of your New York draft before the iron is shipped. We regret the necessity of taking this position, but feel that our past experience with you makes it a necessity.
   "Very truly yours,
    "M. A. HANNA & Co."

To which letter the plaintiff made no response until July, 1, 1902, when he wrote the following letter:

"KENNET SQUARE, PA., July 1, 1902.

"M. A. HANNA & Co.,
     Cleveland, Ohio.

"*Gentlemen*: Taking up the matter of the balance of charcoal iron due on our contract for 500 tons we do not understand why you take the position that you do in this matter, as we were the losers in this transaction as the first car we admit was not cared for promptly, but as we stated we were at that time held up for setlement due us and this was the cause of us not being able to take care of the bill of lading promptly, but as we paid all of the expense for the same we do not see, as stated before why you take such action in this matter and while we are in need of this iron, we wish to do the right thing in every way and as we have said in our previous letters if you will continue to supply us with this iron we can assure you bill of lading will be taken care of promptly upon arrival of the car.

"Now we trust you will carefully consider this matter and advise us by return mail as we could have 100 tons shipped immediately. Trusting to have a favorable reply, we are,
          "Yours very truly,
               "KENNET FOUNDRY & MACHINE WORKS.
"Dict. J. J. C."

The jury necessarily found from the pleadings and the evidence that the contract claimed by the plaintiff was entered into, and that on the 28th day of December, 1901, the defendants repudiated it.

Then if the plaintiff was damaged by reason of this breach, he had a right of action at once upon the receipt of that letter to begin an action. Or, he might wait until the expiration of the time in which the defendants were to have completed their part of the contract. He might have said nothing to the defendants after the receipt of their letter of December 28th and he would still have a right of action upon his contract, and provided he could show that he was at all times ready, able and willing to perform on his part. The jury necessarily found that he was so ready, able and willing, and from the evidence they might well have so found.

Without going into an analysis of the two letters written by the plaintiff hereinbefore quoted, the one of March 22d and the other of July 1st, it is sufficient to say that we find nothing in either of those letters indicating on the part of the plaintiff that he consented to the repudiation of the contract by the defendants.

Under the facts as shown by the bill of exceptions, it would have been surprising if the jury had not reached the conclusion which it did reach, and hence the motion for a new trial on the ground that the verdict was not sustained by the evidence, was properly overruled, and as has already been said there was no error in the ruling upon the evidence or the charge of the court, the judgment is therefore affirmed.